Filed 6/25/21  P. v. Player CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>LAVELL TYRONE PLAYER,<br><br>     Defendant and Appellant. | B303259<br><br>(Los Angeles County<br>Super. Ct. No. A900447) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura C. Ellison, Judge.  Reversed and remanded with directions.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

In 1984, a jury convicted Lavell Tyrone Player of murder. On direct appeal, due to the lack of a jury finding that the crime was first or second degree murder, we deemed it to be second degree murder by operation of law. (See Pen. Code, § 1157.)[1] In 2018, Player petitioned the trial court under section 1170.95 for resentencing. The trial court denied the petition on the ground that Player was an aider and abettor who acted with an intent to kill, and thus, could still be convicted under current law.

Player argues the trial court erred in denying his petition without first issuing an order to show cause pursuant to section 1170.95, subdivision (c). The People agree the trial court exceeded the scope of its prima facie review and that remand is appropriate. We agree and reverse with instructions for the trial court to issue an order to show cause and conduct a hearing pursuant to section 1170.95, subdivisions (c) and (d).

## FACTUAL AND PROCEDURAL SUMMARY

### A. Summary of Facts

This court affirmed the judgment against Player on May 22, 1984. (*People v. Player* (May 22, 1984, 2d Crim. No. 43957) [nonpub. opn.] (*Player*).) Because the appeal before us does not require a detailed recitation of the facts, we provide a short summary derived from Player's direct appeal.

In the early morning of December 19, 1981, Toney Lewis was shot and killed in his van in a parking lot near the intersection of El Segundo Boulevard and Vermont Avenue. Carolyn Spence was in Lewis's van at the time of the shooting

---

[1] Subsequent undesignated statutory citations are to the Penal Code.

and was robbed.  Spence testified that two assailants approached the vehicle and one was armed.  The gunman repeatedly asked Lewis for his wallet and coat.  The gunman took the keys from the ignition.  (*Player*, *supra*, 2d Crim. No. 43957 at pp. 3-4.)

Lewis repeatedly protested, saying "[d]on't take my van." The gunman pushed Lewis back and grabbed some chains from Lewis's neck.  The gunman said, "[t]hat's all right, mother-fucker. You are going to die, anyway."  According to Spence, the gunman pushed Lewis, grabbed him, and then shot him.  (*Player*, *supra*, 2d Crim. No. 43957 at p. 4.)

There was conflicting testimony as to the physical description of the assailants.  At trial, Spence initially identified Player as the gunman.  On cross-examination, however, she was confronted with her previous identification of Player's brother Marcus as the gunman, and conceded her identification of Player as the shooter was a mistake.  She further testified she did not see Player the night Lewis was shot.  (*Player*, *supra*, 2d Crim. No. 43957 at p. 5.)

After Marcus was arrested, Player told his girlfriend, "I am the one that killed the guy behind Denny's."  He also told her, "[e]verybody around here knows that I did it."  (*Player*, *supra*, 2d Crim. No. 43957 at pp. 6-7.)

The People charged Player and his brother Marcus with the murder of Lewis.  (§ 187).  The information further alleged that the murder was committed during the commission of a robbery and an attempted robbery (§§ 190.2, subd. (a)(17)(i), 211, 664). The People also charged Player with the robbery of Spence and with the attempted robbery of Lewis.  (§§ 211, 664.)  As to all counts, the People alleged that Player personally used a firearm and that a principal was armed with a firearm (§§ 1203.06,

3

subd. (a)(1), 12022, subd. (a), 12022.5).  (*Player*, *supra*, 2d Crim. No. 43957 at pp. 2-3.)

Player was convicted after a jury trial of murder, robbery, and attempted robbery.  The jury found true the allegation that a principal was armed with a firearm during the commission of the offense, but did not find true the robbery special circumstance and personal use of a firearm allegations.  Player was sentenced to 26 years to life in state prison.

## B.    Direct Appeal

On direct appeal, we deemed the crime to be second degree because the jury did not specify the degree of murder.  On remand, Player was resentenced to 16 years to life in state prison.

Our opinion addresses Player's argument that the evidence was insufficient to support his conviction for murder as follows.

"[W]e find sufficient evidence of [Player]'s knowledge of the unlawful purpose of the act proposed by Marcus, namely to commit a robbery, and his consent to participate as evidenced by his affirmative response to Marcus' suggestion to go make some money.  [¶]  [Player was] obviously aware that one of [the assailants] was armed with a weapon which had been test fired. . . ." (*Player*, *supra*, 2d Crim. No. 43957 at p. 10.) "[Player's] intentional presence in a situation in which he was part of a planned armed robbery, where one of the assailants told the victim 'you're going to die anyway,' coupled with his knowledge that the threat could be carried out with an operable weapon, shows his knowledge of the intent and purpose of killing the victim Lewis." (*Id.* at p. 12.)  "[T]he inescapable conclusion is that the jury decided that [Player] was present, participated in

4

the robbery and the shooting and therefore guilty of murder, at least as an aider or abettor." (*Id*. at p. 15.)

In addressing Player's claim, we noted that the trial court instructed the jury with a version of CALJIC No. 3.01, which had been "rejected as erroneous" by our high court in *People v. Beeman* (1984) 35 Cal.3d 547. The instruction was "erroneous because it failed to adequately inform the jury that an aider or abettor must be found to have acted with knowledge of the criminal purpose of the perpetrator and with an intent or purpose either of committing, encouraging or facilitating the commission of the offense charged." (*Player*, *supra*, 2d Crim. No. 43957 at p. 13.)

## C.    Section 1170.95 Petition

On December 31, 2018, Player filed a petition for resentencing pursuant to section 1170.95, claiming that he was convicted of murder based on a felony-murder theory. The People filed an opposition supported by our opinion on direct appeal, the preliminary hearing and trial transcripts, and the jury instructions. Counsel for Player filed a reply and two supplemental briefs.

The resentencing court held a hearing on whether Player's petition made a prima facie showing that he fell within the provisions of section 1170.95. The prosecutor argued, in part, that the opinion on direct appeal concluded that Player was an aider and abettor. The court agreed and quoted the opinion's conclusion that Player had knowledge of the intent to kill the victim. The court then stated that it was "very clear from the facts as outlined not just in the trial transcripts but in the Court of Appeal's opinion" that "there's more than ample evidence here

5

to . . . find he was the aider and abettor at the very least with a stated purpose and intent to kill."

Player filed a timely notice of appeal.

## DISCUSSION

### A.    Legal Framework

Prior to the enactment of Senate Bill No. 1437, a defendant who aided and abetted a crime that resulted in a victim's death could be convicted even if the defendant did not act with malice under the natural and probable consequences theory.  (*People v. Offley* (2020) 48 Cal.App.5th 588, 595.)  Existing law also permitted a conviction for felony murder by simply imputing malice to those who commit an inherently dangerous felony which resulted in homicide.  (See *People v. Chun* (2009) 45 Cal.4th 1172, 1184.)

The Legislature enacted Senate Bill No. 1437 "to amend the felony-murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Gentile* (2020) 10 Cal.5th 830, 842; see also § 189, subd. (e)(2) [redefining the prerequisites for application of the felony-murder rule].)

The legislation did not alter the viability of a murder conviction based on direct aiding and abetting liability.  (*People v. Offley*, *supra*, 48 Cal.App.5th at p. 596 ["One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law"].)  For direct aider and abettor liability, "the aider and

abettor must possess malice aforethought." (*People v. Gentile, supra*, 10 Cal.5th at p. 844; see *People v. McCoy* (2001) 25 Cal.4th 1111, 1118 [one who directly aids and abets in murder "must know and share the murderous intent of the actual perpetrator"].)

Senate Bill No. 1437 also added section 1170.95, which allows defendants convicted of murder based on a now invalidated theory to petition for resentencing. (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1135, review granted Mar. 18, 2020, S260598; see § 1170.95, subd. (a).)

Section 1170.95 sets forth a multistep decision-making process. First, a petitioner must make a prima facie showing that he was " 'convicted of felony murder or murder under a natural and probable consequences theory,' " and that " 'all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (*People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1164, citing § 1170.95, subd. (a).)

At these initial stages, "the 'trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is

eligible for relief where the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing.  Just as in habeas corpus, if the record "contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner."  [Citation.] However, this authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, [subdivision] (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion . . . .'  [Citation.]"  (*People v. Nguyen, supra,* 53 Cal.App.5th at pp. 1165-1166.)  A petitioner fails to establish a prima facie showing if the petition is untrue as a matter of law. (*Ibid.*; see also *People v. Swanson* (2020) 57 Cal.App.5th 604, 612, review granted Feb. 17, 2021, S266262 [stating that the "contents of the record of conviction defeat a prima facie showing when the record shows as a matter of law that the petitioner is not eligible for relief"]; but see *People v. Garcia* (2020) 57 Cal.App.5th 100, 116, review granted Feb. 10, 2021, S265692 ["The trial court should not accept the petitioner's assertions as true and issue an order to show cause if substantial evidence in the record supports a murder conviction under current law"].)

" 'If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.' "  (*People v. Offley, supra,* 48 Cal.App.5th at p. 596, quoting § 1170.95, subd. (c).)  Thereafter, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. . . ."  (§ 1170.95, subd. (d)(3).)  "The prosecutor and the petitioner may rely on the

record of conviction or offer new or additional evidence to meet their respective burdens." (*Ibid.*)

## B.    Player Established a Prima Facie Case for Resentencing

Player contends he was charged with a murder that occurred during a robbery, and the jury's finding that he did not personally use a firearm indicates he was convicted under a now invalid theory of felony murder. He argues, and the Attorney General agrees, that the trial court erred in denying his petition for resentencing before holding a hearing with respect to the murder conviction.

The resentencing court rested its decision in part on our opinion on direct appeal, in which we concluded that Player aided and abetted the murder based on his presence during an armed robbery at which an assailant told the victim he was going to die, "coupled with his knowledge that the threat could be carried out with an operable weapon, show[ing] his knowledge of the intent and purpose of killing the victim." (*Player, supra,* 2d Crim No. 43957 at p. 12.) We did not conclude that Player had the specific intent to kill. Rather, our holding suggests that the facts supported a verdict based on application of the felony-murder rule or the natural and probable consequences doctrine.

As we noted on direct appeal, the instructions on aider and abettor liability as provided to the jury were subsequently invalidated under *Beeman*, and thus we cannot rely on the instructions to conclude the jury found Player guilty under a valid theory of direct aider and abettor liability. Thus, nothing in the record of conviction indicates that Player was *necessarily* convicted of murder based on a theory that he was the actual

9

shooter, harbored the intent to kill, or was a major participant in the robbery and acted with reckless indifference to human life.

In arriving at its conclusion that our opinion and the trial transcripts showed that Player was convicted as a direct aider and abettor, the resentencing court necessarily engaged in factfinding at the prima facie stage, which it was not authorized to do.  (*People v. Nguyen*, *supra*, 53 Cal.App.5th at pp. 1165-1166; see *People v. Drayton* (2020) 47 Cal.App.5th 965, 980 [a resentencing court's decision-making authority at the prima facie stage "is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion"].)

Accordingly, the matter must be remanded for an order to show cause pursuant to section 1170.95, subdivision (c), and a hearing pursuant to section 1170.95, subdivision (d), during which the parties "may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3).)  We express no opinion on Player's ultimate entitlement to relief following a hearing.

## DISPOSITION

The order denying Player's petition for resentencing under section 1170.95 is reversed and the matter is remanded to the superior court. On remand, the superior court shall issue an order to show cause and conduct a hearing in accordance with section 1170.95, subdivisions (c) and (d).

NOT TO BE PUBLISHED

FEDERMAN, J.*

We concur:


ROTHSCHILD, P. J.


BENDIX, J.

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11